IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GURPREET KHURANA,<br>　　　　Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-5188 |
| | : | |
| STRATEGIC DISTRIBUTION,<br>INC., et al.,<br>　　　　Defendants | : | |

## M E M O R A N D U M

STENGEL, J.                                                                                          December 10, 2008

This is an employment discrimination case. Gurpreet Khurana has brought suit against Strategic Distribution, Inc. (SDI), Platinum Equity, LLC,[1] Project Eagle Holding Corporation,[2] Vijay Ramachandran,[3] Daniel Kearney,[4] and Ronald Fijalkowski[5] for the alleged discriminatory treatment he received while working at SDI. Following Khurana's failure to timely serve process, four motions are now pending: the defendants' Motion to Dismiss for Failure to Serve Process (Defs.' Mot. to Dismiss (Document #3)), the plaintiff's Response and Cross-Motion to Extend the Service Period (Pl.'s Resp.

---

[1] Platinum Equity, LLC, through its portfolio company and wholly owned subsidiary, Project Eagle Holding Corporation, acquired SDI in March of 2007. (Pl.'s Am. Compl. ¶¶ 3, 5.)

[2] Project Eagle Holding Corporation is a wholly owned subsidiary of Platinum Equity, LLC, and is SDI's parent organization. (Id. ¶ 3.)

[3] During the pertinent time period, Ramachandran served as SDI's Director of Inventory Management. (Id. ¶ 6.)

[4] During the pertinent time period, Kearney serves as SDI's General Counsel and Vice President of Human Resources. (Id. ¶ 7.)

[5] During the pertinent time period, Fijalkowski served as SDI's Chief Information Officer. (Id. ¶ 8.)

(Document #9)), the defendants' Motion to Quash Service (Defs.' Mot. to Quash (Document #11)), and the plaintiff's Cross-Motion to Enlarge the Service Period (Pl.'s Cross-Mot. (Document #13)). The issues are whether Khurana's delays in serving process require dismissing his claims, whether Christopher Moran, Esq., the defendants' counsel, was a proper agent to receive service, and whether the court should enlarge the time for service. After considering the parties' memoranda, I will deny the defendant's Motion to Dismiss and Motion to Quash, and will grant the plaintiff's Cross-Motion to Enlarge the Service Period.[6]

## I. Background

Mr. Khurana is an Indian citizen and entered the United States on a student visa in August 2003. (Pl.'s Cross-Mot. at 3). After completing his studies, he was employed at SDI starting on or about June 6, 2005. (Id.) He continued to work at SDI until his termination in December 2005. (Am. Compl. ¶ 58.) He alleges that he was wrongfully terminated and that SDI's actions were made in retaliation for his complaints about the treatment he received while an employee. (Id. ¶¶ 44–45.) Khurana's complaint also states that SDI, with the assistance of outside counsel, submitted a "highly unusual (and substantively false) report to federal immigration authorities," which was motivated by its

---

[6] Mr. Khurana filed two motions to enlarge the time for service. (See Documents #9, 13.) Because the first motion to enlarge followed the improper service on Moran, see discussion infra part III.A., it will not be considered.

desire to have him arrested and deported. (Id. ¶ 58). His visa was revoked, and he was arrested by federal immigration authorities on or about December 13, 2005. (Id.) He was detained for 131 days. (Id.)

While still in detention, Mr. Khurana made his first filing with the Department of Labor and the Office of Special Counsel for Immigration Related Unfair Employment Practices in January 2006. (Pl.'s Cross-Mot. at 4–5.) Four months later, he dual-filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Rights Commission (PHRC). (Id.) After receiving right-to-sue letters from both agencies, Mr. Khurana timely filed his original complaint on December 7, 2007. (Id.) He then had 120 days within which to serve process on the defendants.

Mr. Khurana filed an amended complaint on March 31, 2008. (Id. at 5.) Five days were left in the service period, and process had not yet been served. Khurana's counsel states that she had contacted the Clerk of the Court and had been "incorrectly told" that filing an amended complaint would reset the time for service. (Pl.'s Resp. at 4–6.) On July 9, 2008—100 days after the amended filing, and 215 days after the original complaint was filed—the defendants moved to dismiss for failure to serve process. Six days later, Mr. Khurana served process on Christopher Moran, counsel for the defendants. On July 22, 2008, Mr. Khurana filed his reply and moved for an extension of the service period.

On July 29, 2008, the defendants responded and moved to quash the July 15, 2008,

service on the grounds that it was improperly made on their counsel. By August 12, 2008, Khurana replied to the motion and had re-executed service on all defendants.

## II. Standard of review

Federal Rule of Civil Procedure 4 instructs plaintiffs on how to make service. First, it must be made upon a proper person. When serving an individual, a corporation, a partnership, or other association in the United States, the plaintiff has several options. See FED. R. CIV. P. 4(e)(2). One of these is to deliver a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Id. 4(e)(2)(B), (h)(1)(B).

Second, service must be made within 120 days of the filing of the complaint. Id. 4(m). If the defendant or his authorized agent has not been timely served and moves to dismiss, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id. Determining whether to extend the time for service under Rule 4(m) is a two-step inquiry. See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). First, the court must determine if the plaintiff can demonstrate good cause for failing to timely serve process; if good cause is found, "the court must extend the time for service for an appropriate period." Id. Second, if no good cause is found, the court has discretionary authority to grant an extension of time. Id.

## III. Discussion

### A. Was service on Mr. Moran proper?

The initial issue is whether the July 15 service on Mr. Moran was proper under either Rule 4(e)(2)(C) or 4(h)(1). It was not. Rule 4 provides that one way service may be made is by delivering a copy of the summons and the complaint to "an agent authorized by appointment or by law to receive such process." Attorneys may be agents for service, but must have express or implied authority to do so. See Viking Metallurgical Corp. v. A. Johnson & Co., Inc., 1987 WL 19241, at *3 (E.D. Pa. Oct. 28, 1987) (quoting United States v. Marple Community Record, Inc., 335 F. Supp. 95, 101 (E.D. Pa. 1971)). Express authority is created when the client actually empowers the attorney to be served on his behalf. Whether an implied authority exists must be determined in light of "all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." United States v. Bosurgi, 343 F. Supp. 815, 818 (S.D.N.Y. 1972) (footnote omitted). Neither form of authority, however, is automatically conferred upon the attorney solely through the existence of an attorney-client relationship. See United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997) ("The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service."). Indeed, "[e]ven where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service." Id.

Here, defense counsel was neither expressly nor impliedly authorized to receive service on behalf of his clients. Because Mr. Khurana has presented no evidence or argument for express authorization, it will not be considered. As for Mr. Khurana's implied authority argument, I find that it is unconvincing.

First, Mr. Khurana argues that Mr. Moran was the defendants' general agent. He indicates that opposing counsel failed to limit his appearance when filing the initial motion to dismiss. (Pl.'s Cross-Mot. at 7.) This failure allegedly indicated that Mr. Moran was acting as a general agent, and he could be served. (Id.) This argument is unpersuasive because Mr. Moran's alleged failure hardly serves as evidence that the *defendants* impliedly authorized him to be served on their behalf. Implied authority is found when the facts indicate the principal's intent to confer agency authority. See 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1097 (3d ed. 1987). Mr. Khurana has not alleged any other facts showing that the defendants intended to appoint Mr. Moran their agent for service. At the most, Mr. Khurana has shown that Mr. Moran was retained by the defendants to defend them in the pending litigation. He may have had "broad powers," but such an investiture would not have made him an agent for service. In fact, here, Mr. Moran entered an appearance to contest service. The filing of a motion to dismiss by an attorney does not mean that the attorney is automatically the agent of the defendants for purposes of accepting service.

Mr. Khurana also presents what may be best described as an "agency-through-

succession" argument. He contends that because the defendants had retained other attorneys (who allegedly had agency-type authority) for handling Mr. Khurana's visa status and USCIS proceedings, Mr. Moran became the logical successor to that authority. (Pl.'s Cross-Mot. at 7–10.) He cites no authority supporting this unique "transfer" argument. The fundamental flaw in the argument is that it assumes (without explaining) that any supposed agency authority created in one attorney who has been retained for a particular purpose would automatically transfer to another attorney who has been retained for a different, albeit related, purpose. Assuming without deciding that prior counsel had been agents, it does not necessarily follow that Mr. Moran inherits that authority: the purposes of each proceeding are different, and he has no formal association with prior counsel or their firm. Cf. Ziegler, 111 F.3d at 881 (finding that an attorney was not a proper agent to receive service despite having represented the client in a prior related matter); J&L Parking Corp. v. United States, 834 F. Supp. 99, 102 (S.D.N.Y. 1993) (finding that an attorney was not a proper agent for service despite the fact that the attorney's firm had represented the client in a prior related matter). As Mr. Khurana has alleged no facts tending to show an implied agency relationship, I find that the service was improper because Mr. Moran was not the defendants' agent for service

If there were no other facts before the court, the matter would end here. I move to the second part of the Rule 4(m) analysis because after receiving the defendants' Motion to Quash, Mr. Khurana finally served process upon the proper persons. The next

consideration is whether Mr. Khurana can demonstrate good cause for this delay, and if not, whether the court should extend the time for service.

### B. Should the time for service be enlarged?

#### 1) Good cause

Mr. Khurana has not demonstrated good cause for the delay. If good cause is shown, "the court must extend the time for service for an appropriate period." Petrucelli, 46 F.3d at 1305. What constitutes good cause is not specified in the Rules, but the Third Circuit has set forth five factors for district courts to consider. They are:

> 1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of certification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988) (defining "good cause" in reference to an "excusable neglect" standard); see also MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (distilling the "good cause" analysis to: "(1) the reasonableness of plaintiff's effort to serve; (2) whether plaintiff moved for an enlargement of time to serve; and (3) whether the defendant is prejudiced by the lack of timely service" (citing United States v. Nuttall, 122 F.R.D. 163, 166–67 (D. Del. 1988)). Ultimately, the inquiry is whether the party seeking an enlargement has demonstrated good faith and provided a reasonable basis for its non-compliance.

Dominic, 841 F.2d at 517 (citing Wright & Miller, supra, § 1165).

The defendants first argue that Khurana's counsel failed to make herself aware of the procedural rules and displayed a lack of diligence in pursuing her client's case. (Defs.' Mot. to Quash Ex. B at 3–4.) Approximately 90 days after filing the original complaint and in anticipation of filing the amended complaint, Khurana's counsel had contacted the Clerk of the Court on separate occasions to ask whether service of the original complaint would still be necessary and whether the deadline for service would be based on the original or amended filing. She was "wrongly advised" that the filing of an amended complaint would extend the deadline for serving process. The defendants argue that Mr. Khurana may not justify his delay on this incorrect information and that the correct answer could have been easily found with some research. (See id. at 3 (quoting Wright & Miller's Federal Practice and Procedure as stating that the filing of an amended complaint does not reset the plaintiff's time to make service); see also Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 884 (3d Cir. 1987) ("It has been a long-standing principle of jurisprudence . . . that ignorance of the law is no excuse.")).

They next allege that Mr. Khurana did not make a good faith effort to comply because he inexplicably delayed service of the amended complaint for 100 days after that filing. (See Defs.' Mot. to Quash Ex. B at 4.) Even though process was finally served, it was only after the defendants had moved to dismiss. They suggest that Mr. Khurana's quick response indicated he had the ability to make service all along. (Id. at 5.) The

defendants argue that in light of all the facts, "there was no good reason for Khurana to delay serving process, and that Khurana was deliberately delaying service while his counsel sought co-representation." (Id.)

In opposition, Mr. Khurana first appears to argue that his counsel was already aware of the 120-day service window, which would refute the suggestion that counsel had failed to inform herself. (Pl.'s Cross-Mot. at 12.) He also contends that "the fact that his counsel did not contact the Clerk of the Court about service of process until approximately thirty (30) days remained for serving the original Complaint does not indicate that counsel would otherwise have failed to affect service" within the applicable time period. (Id.)

Mr. Khurana's argument that the allegation he deliberately delayed service in an attempt to secure co-counsel misconstrues his counsel's affidavit. (Id.) According to Mr. Khurana, the affidavit merely stated that counsel's inquiries with the Clerk were at the "*suggestion* of potential co-counsel," (Id. at 12 (emphasis added)), and the defendants' reading is merely one interpretation. Moreover, the defendants' argument unnecessarily forecloses the possibility that any alleged attempt to secure co-counsel was "substantially motivated by a desire to insure proper compliance with judicial procedure." (Id. at 13.)

Mr. Khurana explains that the "service delays" were in part the result of the defendants' own actions: the defendants linked his employment discrimination claims to his immigration status. (Id.) As a result, Mr. Khurana's status in the United States

became uncertain, and he believed it to be necessary to petition for an adjustment of his status and request a green card. In hopes of finalizing those immigration issues first, he believes that he justifiably waited during the permissible Rule 4(m) period.

Finally, Mr. Khurana addresses the defendants' allegations of bad faith conduct. First, as to whether there was to be a second amended complaint, Mr. Khurana admits that while it was a consideration, there was no way he could have re-filed a complaint as a delay tactic: the first amended complaint would still have to have been served. (Id. at 13–14.) Second, he offers to produce records showing his counsel's communications with the Clerk of the Court, which would demonstrate counsel's good-faith efforts to comply with procedure. (Id. at 14.) Third, even though the defendants tried to draw attention to the fact that Mr. Khurana had not requested an extension for the time for service when he filed his amended complaint, he believes there was no reason to have made such a request. (Id.) He admits that he believed refiling would give him an additional 120 days to make service. Consequently, he perceived no need to request an extension and did not do so. Finally, Mr. Khurana believes that the fact that he has acted promptly when the delays and errors were made known demonstrates good faith. (Id.)

After considering these arguments, I find that Mr. Khurana has failed to demonstrate good cause. As discussed before, the onus is on the plaintiff. First, several of his arguments are wholly inapplicable to the court's good-cause inquiry. For example, I fail to see what difference it makes if Mr. Khurana believes he would have made timely

service but for the filing of the amended complaint. The very issues are the filing of the amended complaint and subsequent failure to serve. Similarly, Mr. Khurana's offers to make the records of his counsel's communications with the Clerk's office would show only that. Viewing the records would shed no further light on the reasonableness of Khurana's delays. Additionally, any argument based on the promptness with which he has responded to the defendants' motions fails to address why the service was late to begin with.

Second, Mr. Khurana has not forwarded evidence demonstrating a reasonable basis for his delay. Mr. Khurana brings attention to the fact that he had been detained and faced potential deportation, which was why he waited as long as possible before serving process. I find this unpersuasive. Mr. Khurana still failed to inform himself of and comply with the process rules. While he may have believed it necessary to wait until certain visa issues were resolved, those subjective beliefs hardly excuse the lengthy delays seen here.

The reason for the delay was Mr. Khurana's mistaken belief that filing an amended complaint would reset the time for service. His counsel failed to inform herself of the proper rules and cannot now justify her reliance on the incorrect information she received.[7] He has not demonstrated good cause to overcome this error.

---

[7] It is worth noting that after the defendants correctly indicated that Mr. Khurana was not entitled to rely on the advice from the Clerk of the Court, he has not attempted to refute this point. (See Defs.' Mot. to Quash Ex. B at 3–4 (stating that Khurana cannot justify the service delay on the fact that he relied on information from third parties). See generally Pl.'s Cross-Mot. (providing no discussion on the propriety of relying on the information received from the Clerk of the Court)).

## 2. Discretion to extend time for service

I will grant Mr. Khurana's request to enlarge the time for service.[8] After determining that the plaintiff failed to demonstrate good cause for the untimely service of process, the court may choose to dismiss the action without prejudice or order that service be made within a specified time. See Petrucelli, 46 F.3d at 1307. While the Third Circuit has not provided direct guidance on what factors to consider in making this determination, it has approvingly referred to the Advisory Committee Notes to the 1993 Amendment. See id. at 1305–06. The Notes suggest that a discretionary extension of time may be justified when the statute of limitations would bar the plaintiff from refiling his claim. FED. R. CIV. P. 4(m) advisory committee's note; see Farrace v. United States Dept. of Justice, 220 F.R.D. 419, 421–22 (D. Del. 2004) (stating that the Third Circuit has recognized the Notes as providing the statute of limitations as a potential factor in deciding whether to extend the time for service). Other factors that courts have considered are the reasons for the delay, see, e.g., Pilone v. Basik Funding, Inc., 2007 U.S. Dist. LEXIS 4998, at *8–14 (D.N.J. 2007) (granting an extension for service where the plaintiff's attempts to serve a corporate defendant were frustrated by the use of an incorrect address on the certificate of incorporation), how the plaintiff has responded when the service delay was raised, see Farrace, 220 F.R.D. at 422 (determining that the plaintiff's quick response to the Government's motion to dismiss evidenced good faith),

---

[8] Mr. Khurana filed two motions to enlarge the time for service. (See Documents #9, 13.) Because the first motion to enlarge followed the improper service on Moran, it will not be considered.

and whether the defendant was prejudiced by the delay, see Steele v. HCI Direct, 2004 U.S. Dist. LEXIS 14595, at *6–7 (E.D. Pa. July 24, 2004). Such discretion is to be exercised in line with the Third Circuit's stated preference "that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

I believe retroactively enlarging the time for service is justified. The statute of limitations would bar Mr. Khurana from refiling several claims, he has acted promptly in response to the defendants' motions, and the defendants have not been unduly prejudiced by the delay. First, the statute of limitations would bar Mr. Khurana from refiling the claims he had brought before the EEOC. (Pl.'s Resp. at 15; Pl.'s Cross-Mot. at 8.) While a bar does not require the court to give special consideration to the plaintiff's case, it weighs in favor of enlarging the time.[9]

Second, Mr. Khurana has responded promptly to the defendants' motions. After the defendants' initial motion to dismiss, Mr. Khurana served process on Mr. Moran within one week. When the defendants then filed their motion to quash the improper service, Mr. Khurana responded within approximately two weeks' time. Based on these facts, I find that Mr. Khurana has been sufficiently responsive when made aware of his service errors, which favors granting an extension.

Third, the defendants have suffered minimal prejudice from these delays. They

---

[9] I have made no judgment as to whether any of Khurana's claims are untimely, and the defendants should still retain the opportunity to raise that defense.

have alleged no facts indicating they had no knowledge of the claims against them. On the contrary, the defendants have actively participated in this litigation and were arguably aware of its existence.

## IV. Conclusion

For the foregoing reasons, I will grant the plaintiff's Cross-Motion to Enlarge the Service Period, and deny the defendants' Motion to Dismiss, Motion to Quash, and the plaintiff's Response and Cross-Motion to Extend the Service Period. An appropriate Order follows

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GURPREET KHURANA,<br>　　　　Plaintiff | : CIVIL ACTION<br>:<br>: |
| v. | : NO. 07-5188<br>: |
| STRATEGIC DISTRIBUTION,<br>INC., et al.,<br>　　　　Defendants | :<br>:<br>: |

## O R D E R

STENGEL, J.

AND NOW, this 10th day of December, 2008, upon consideration of the plaintiff's Cross-Motion to Enlarge the Service Period (Document #13), it is hereby ORDERED that the motion is GRANTED. The plaintiff's time for serving process is retroactively extended to August 14, 2008.

FURTHERMORE, it is hereby ORDERED that the defendants' Motion to Dismiss for Failure to Serve Process (Document #3), the plaintiff's Response and Cross-Motion to Extend the Service Period (Document #9), and the defendants' Motion to Quash Service (Document #11) are DENIED.

BY THE COURT:

_____
LAWRENCE F. STENGEL, J.